Judge Underwood,
delivered the opinion of the court.
Wilson as relator, instituted an action of debt against Finn, as surety for Digger, a constable,' in his official bond.
The first question relates to the validity of the declaration which was brought betbre the court by demurrer. The bieach of -Lie condition of the bond assigned, is, that “there was put into the hands of Bigger, as constable of fcimpson county, for collection, by Wilson, a certain replevin bond, in favor of said Wilson against Wm. and juavid Denning, principals, and John Den-ning surety for -‡ and cents, and the said Big- *339 ,^er on the day of collected the same without execution, and though often requested at the circuit aforesaid, by the said Wilson, and duly authorized to have and and'receive the same, he, the said Bigger, constable as aforesaid, has hitherto, wholly failed and refused so to do, of all which, the defendant hath ■ had due notice whereby, &c.”
a constable is not bound to' 0yer ,„oneyay collected by llim'
in an action against a surety of a a failure by the con«taW °^reo "¿d^y the declaramwit avez th/money0 from the coastable, and a / y mn
The breach is insufficient to entitle the relator to recover. What did Wilson request Bigger to do? What did Bigger refuse to do? As Bigger was not bound to go out of the county to pay the money to Wilson) if he resided in another county, before (here was an. ground for an action, in person or by an authorized agent, lie was bound to demand pat merit of the money, and Bigger must have refused payment. Now, there is nothing in the above assignment of the breach, which shows a demand of payment, or a refusal to make payment by Bigger, and we have no ground on which to suppose such demand and refusal took place, but the great absurdity of instituting the action without the facts existed, and as it seems that Wilson requested something, although it is not stated wha(, it might seem proper to presume that he requested him to do that, for refusing which, the right of action accrued. But we cannot supply importarit and material averments upon such grounds, if we could, we might go on dispensing with appropriate allegations, until a declaration would not contain sufficient notice to apprise the adverse party of the points intended to be relied on, and thereby, do much mischief. Whether a proper demand of payment was made, was an issuable fact, in case Wilson did not live in Simpson county. The averment of non-payment is substance. In these particulars, the declaration is defective, and the court upon demurrer, should have given judgment against the declaration.
As the relator upon the return of the cause, may have leave to amend his declaration should he apply for it, and the cause may then progress to trial upon its merits, we deem it proper to notice some matters which are now presented, and which will probably occur again. The controversy will probably be decided by a proper interpretation of the 7lh section of an act of 1820, concerning constables, (I J)ig. 299.) That section provides,“that *340 any constable, receiving any writing obligatory, or account for collection, and who shall collect the same without execution, the same proceedings may be had against him and his sureties, as could or might be had against such constable and his sureties, for moneys collected by him on execution.” It is contended by the council for the plaintiff in error, that replevin bonds are not embraced by the section aforesaid, and that if these are put into a constable’s hands for collection, and he gets the money without execution, and refuses to pay it over upon request, his sureties are not responsible; that,such a case, notwithstanding the said act of 1820, falls within the principles settled in the case of Bernard vs. Johnson, III Bibb, 432.
A replevin, bond'is-a im'ii&g obligatory. The 7th section yf' the Act of ’20, which l'endevs constables and their sureties liable to the same proceedings for money collected by him on any writing obligatory or account, as if he had collected it under execution, embraces replevin bonds.
The whole of this argument is built upon a supposed' distinction between the technical imporL of the terms writing obligatory- and replevin- bond, as used by the legislature. We cannot consent, however, to such a construction of the act of 1820. It is true, that a. replevin bond, is something more than a writing obligatory, but it is still a writing obligato^, and as such, an action of debt may be sustained and founded upon it. The language of the section is, therefore, broad enough to embrace replevin bonds. It should, therefore, he shown that there is some important reason for excluding them from the operation of the statute before we could feel authorized to exclude them. Now, instead of their being any such assignable reason, we think, every coñsideration of sound policy brings them within the operation of the-statute. Suppose a note of hand is delivered to a constable for collection, and he takes out a warrant, obtains judgment, sues out execution, and the defendant replevies. Suppose the constable, instead of returning the replevin bond to the proper office,, holds it up until the execution expires, receives the money thereon, from the obligors, and then delivers it to them with his receipt endorsed; shall he hold the money and his sureties escape responsibility? In such a case, it might be said, that he had collected the original note delivered to him, and we do not doubt but he would be answerable for its amount. This, however, would not embrace the costs included1 within the replevin bond, and for these, the obligee would have no remedy against the constable’s sureties,.unless the replevin bond *341 comes within the operation of the statute. But the original note may never have been placed In the constable’s hands for collection. An execution after judgment, may have been the first thing put'into his hands; if, upon this, he takes the replevin bond, and then collects it, and surrenders it as aforesaid, the distinction contended for, and the,strict construction asked for the words “any constable receiving,” would altogether exonerate the constable’s sureties from liability. The section under consideration was intended by the legislature, to have an extensive remedial operation, for toe purpose of securing honest men against the chicanery of insolvent and dishonest constable’s, or the losses which might result from their misfortunes, if honest; and, therefore, it should be liberally interpreted. In this spirit, we think it embraces all cases where a writing obligatory of any description comes, to the hands of a constable for coilection; and whether he receives it from the obligee or his agent, or whether he takes it officially in the course of business in pursuance of law, or, whether another officer who may have taken it, puts it into the hands of the defaulter for collection,withoutthe knowledge of the obligee, but for his use, can, in our opinion, make no difference. ■
The sureties of a constable, otta replevin bond without execution, are amount thcreof.
Eruing, for plaintiff; Chittenden, for defendant..
Upon the return of the cause, there can be no difficulty in applying the foregoing principles to the facts, and under the new aspect which the pleadings may-then assume, there is no propriety in noticing the other points now made.
Judgment reversed with costs, and cause remanded, for proceedings in conformity to .this opinion.